UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
AGAR TRUCK SALES, INC,　　　　　　　　　:　　　　　05 Civ. 9732 (SHS)
　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　Plaintiff,　　　　　　　　　　　　　:　　　　　OPINION & ORDER
　　　　　　　　　　　　　　　　　　　　　　　　　:
　　-against-　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:
DAIMLERCHRYSLER VANS, LLC,　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　Defendant.　　　　　　　　　　　　:
------------------------------------------------------ x

SIDNEY H. STEIN, U.S. District Judge

In this action for damages and declaratory and injunctive relief, Agar Truck Sales, Inc. ("Agar"), a motor vehicle dealer in Yonkers, N.Y., claims that the decision of DaimlerChrysler Vans LLC ("DC Vans"), a manufacturer of commercial vans, to discontinue its Freightliner Sprinter line of commercial vans violated (i) the federal Automobile Dealers' Day in Court Act ("ADDCA"), 15 U.S.C. § 1221 et seq.; (ii) the New York State Franchised Motor Vehicle Dealer Act, N.Y. Veh. & Traf. Law § 463 (2006); and (iii) breached a covenant of good faith and fair dealing.

DC Vans has moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). That motion is granted because Agar has not alleged a lack of good faith on the part of DC Vans sufficient to state a claim pursuant to the ADDCA, which defines "good faith" narrowly as "freedom from coercion, intimidation, or threats of coercion or intimidation." See 15 U.S.C. § 1221(e). In addition, the Court declines to exercise supplemental jurisdiction over Agar's state law claims.

1

## I. BACKGROUND

The following facts are drawn from the complaint, the Dealer Agreement between Agar and DC Vans and two letters from DC Vans to Agar.[1]

DC Vans introduced the Freightliner Sprinter Van, a commercial van, to the marketplace in 2001. (Compl. ¶ 4.) In October of that year, DC Vans entered into a "Dealer Agreement" with Agar that authorized Agar to sell and service the Freightliner Sprinter. (Id. ¶ 8.) The Dealer Agreement provided that Agar would be a "non-exclusive dealer" of the Freightliner Sprinter in Westchester, New York, which was Agar's "Primary Market Area." (Dealer Agreement, art. 3.1(2) and Annex C, Ex. A. to Aff. of Dyan Figuerra-Ducharme dated Jan. 20, 2006 ("Figuerra-Ducharme Aff.").) DC Vans retained the right to "appoint other dealers in the Primary Market Area on terms and conditions deemed appropriate and . . . to distribute, sell and service any other motor vehicles, whether passenger or commercial vehicles, in the Primary Market Area on such terms and conditions deemed appropriate." (Id., art. 3.3.) The agreement also gave DC Vans the right to "discontinue the manufacture, importation or distribution of vehicles at any time and without any obligation to Dealer by reason thereof." (Id., art. 9.13.) The agreement specified that it would expire on September 19, 2005, "unless terminated earlier in accordance with the terms hereof or in accordance with applicable law" and that "[n]either party shall have the right to renew or extend this Agreement after its expiration date." (Id., art. 15.1; see also Compl. ¶ 20.)

---

[1] In deciding a motion to dismiss, a court may consider a document referenced in the complaint if "the plaintiff has relied on the terms and effect of [that] document in drafting the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002). Here, Agar relied on the Dealer Agreement and the letters from DC Vans in drafting its complaint and those documents are integral to its claims. (See Compl. ¶¶ 8, 10, 11, 17, 19, 20.)

Agar alleges that as a Freightliner Sprinter dealer, it made "brand-specific investments in facilities, equipment, tools, signage, sales, training, advertising and promotion in the Freightliner Sprinter brand of products." (Compl. ¶ 14.) It also – allegedly at the "insistence" of DC Vans – converted one of its properties into a facility dedicated solely to the sales and service of the Freightliner Sprinter. (Id. ¶ 9.) Less than a year later, however – on July 19, 2002 – the President and CEO of DC Vans wrote its U.S. Freightliner Sprinter dealers, including Agar, that DC Vans intended to discontinue the Freightliner Sprinter brand of vans in 2006 and replace that brand with a "Dodge branded Sprinter." (Letter from Tim A. Reuss, President & CEO, DC Vans, to DC Vans Dealer Network (July 19, 2002), Ex. B to Figuerra-Ducharme Aff.; see also Compl. ¶ 17.) The letter read in relevant part as follows:

> DaimlerChrysler Vans has made a sincere effort to keep our dealers informed of all activities regarding their franchise. In this continued spirit I feel compelled to advise you of a decision made on Wednesday by the Executive Automotive Council of DaimlerChrysler. The EAC has decided to introduce a Dodge branded Sprinter. This decision is due to:
> Overall demand of customers for more service locations [and]
> Linked pickup, SUV and passenger car sales through the established Dodge brand umbrella.
> Effective with the introduction of the replacement model to the Sprinter in approximately 2006, the Freightliner Sprinter will be discontinued. No additional van products will be offered under the Freightliner brand. DaimlerChrysler will honor all DC Vans dealer agreements; all dealers can continue to order vehicles and service tools until the phase-out. Regarding parts supply, this will continue uninterrupted by Freightliner LLC as outlined today in their communication to you.

(Id.) The complaint does not specify whether Agar responded to this letter.

In 2003, according to Agar, Mercedes Benz, which produced the Sprinter engine, stated publicly that the new Dodge Sprinter was "vital to Dodge's commercial strategy" and that "it was always DaimlerChrysler's intention to put a Dodge nameplate on the Sprinter and use the Dodge dealer base in the U.S." (Compl. ¶ 18.)

3

Approximately six months before the expiration of the Dealer Agreement – on Feb. 28, 2005 – DC Vans again wrote to its U.S. Freightliner Sprinter dealers, including Agar, restating its decision to discontinue the Freightliner Sprinter in 2006 and offering to buy out Agar's rights under the Dealer Agreement. (Compl. ¶ 19.) It added that if Agar declined the offer it would be terminated pursuant to the terms of the Dealer Agreement. (Id.) That letter stated as follows:

> As advised in the DC Vans letter dated July 7, 2002, we intend to discontinue the distribution of the Freightliner Sprinter Van at the end of the 2006 model year. In order to pursue an orderly transition for DC Vans and you, the dealer, we propose to pay you the amount specified below in consideration of your voluntary termination as a dealer as detailed in the attached Termination and Release Agreement. The amount we propose to pay you is $1,700 for each Freightliner Sprinter that you sold during your best calendar year of sales. According to our records, your dealership's best sales year was 2004 when it sold 103 vehicles, which means that we are offering you the amount of $175,100. . . .
> In the event you do not choose to accept this offer, DC Vans will provide you with a formal notice of termination at a later date in compliance with your dealer agreement and state law.

(Letter from Patrick W. Dougherty, President, DaimlerChrysler Vans LLC, to Thomas Abaruzese, Agar Truck Sales, Inc. (Feb. 28, 2005), Ex. C to Figuerra-Ducharme Aff.) Agar has received "no further written notice from DC Vans concerning the non-renewal or termination of its Freightliner Sprinter van franchise." (Compl. ¶ 21.) Agar filed the complaint in this action on Nov. 17, 2005.

## II. DISCUSSION

A. Standard for a Motion to Dismiss

The Court can grant a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Equal Employment Opportunity Comm. v. Staten Island Savings Bank, 207 F.3d 144, 148 (quoting Conley v. Gibson, 335 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed.

4

2d 80 (1957)) (quotation marks omitted). In reviewing a motion to dismiss, the court must treat all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the non-moving party. Ganino v. Citizens Utils. Co., 228 F.3d 154, 161 (2d Cir. 2000); Lee v. Bankers Trust Co., 166 F.3d 540 (2d Cir. 1999).

B. The ADDCA

Agar's only federal claim is asserted pursuant to the ADDCA. That statute provides that a dealer can bring suit in federal court for damages if a manufacturer fails "to act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling, or not renewing the franchise." 15 U.S.C. § 1222. The purpose of the statute is "to redress the economic imbalance and unequal bargaining power between large automobile manufacturers and local dealerships, protecting dealers from unfair termination and other retaliatory and coercive practices." Northview Motors, Inc. v. Chrysler Motors Corp., 227 F.3d 78, 92 (3d Cir. 2000).

To state a claim pursuant to the ADDCA, a dealer must show that the manufacturer failed to act in "good faith," see, e.g., Empire Volkswagen Inc. v. World Wide Volkswagen Corp., 814 F.2d 90, 95 (2d Cir. 1987), "although not in the ordinary sense of that phrase," Quarles v. General Motors Corp., 597 F. Supp. 1037, 1040 (W.D.N.Y. 1984). The ADDCA defines good faith as:

> the duty of each party to any franchise, and all officers, employees, or agents thereof to act in a fair and equitable manner toward each other so as to guarantee the one party freedom from coercion, intimidation, or threats of coercion or intimidation from the other party: Provided, that recommendation, endorsement, exposition, persuasion, urging or argument shall not be deemed to constitute a lack of good faith.

15 U.S.C. § 1221(e).

5

The U.S. Court of Appeals for the Second Circuit has determined that the term "good faith" in the ADDCA context "has a narrow, restricted meaning." Empire Volkswagen, 814 F.2d at 95. "In order to succeed on a Dealers' Act claim, the dealer must demonstrate that the manufacturer exercised coercion or intimidation or made threats against the dealer . . . to achieve an improper or wrongful objective." Id. (citations omitted). See also Autohaus Brugger v. Saab Motors, Inc., 567 F.2d 901, 911 (9th Cir. 1978) (Good faith "is not to be construed liberally. . . . It does not mean 'good faith' in a hazy or general way, nor does it mean unfairness. The existence of 'good faith' must be determined in the context of actual or threatened coercion or intimidation.").

Thus, an ADDCA claim survives only when the manufacturer makes a "'wrongful demand enforced by threats of coercion or intimidation.'" Empire Volkswagen, 814 F.2d at 95 (quoting McDaniel v. General Motors Corp., 480 F. Supp. 666, 676 (E.D.N.Y. 1979), aff'd, 628 F.2d 1345 (2d Cir. 1980)); see also General Motors Corp. v. New A.C. Chevrolet, 263 F.3d 296, 304 (3d Cir. 2001) ("[T]he type of coercion or intimidation rendered actionable by the ADDCA occurs only when the manufacturer makes a wrongful demand which will result in sanction if not complied with.") (internal quotations and citation omitted). An "arbitrary decision[] with respect to termination of a dealership" does not by itself constitute an actionable wrongful demand, McDaniel, 480 F. Supp. at 676, nor does merely insisting that the dealer comply with a reasonable obligation imposed by the franchise agreement, General Motors Corp., 263 F.3d at 326. However, an express wrongful demand is not required; rather, a wrongful demand may "be inferred from all the facts and circumstances." Diehl & Sons Inc. v. Int'l Harvester Co., 426 F. Supp. 110, 124 (E.D.N.Y. 1976).

C. Agar Fails to State a Claim Pursuant to the ADDCA

DC Vans contends that Agar fails to state a claim pursuant to the ADDCA because the allegations in the complaint, even when assumed to be true, do not support the contention that DC Vans failed to act in "good faith" as defined in the ADDCA.[2] DC Vans asserts that it was authorized by the Dealer Agreement to authorize other dealers to distribute the Freightliner Sprinter and any other line of vehicles – including the Dodge Sprinter – in Agar's market area, and to discontinue the manufacture or distribution of vehicles at any time. It contends that its July 19, 2002 letter provided Agar with four years of notice that the Dealer Agreement may be terminated and therefore could not be characterized as constituting actual or threatened coercion or intimidation. DC Vans also asserts that the Feb. 28, 2005 letter simply provided Agar with an opportunity to be paid to elect a voluntary early termination and was therefore not coercive or intimidating.

Agar responds that DC Vans' actions violated the ADDCA in two ways. First, Agar claims that DC Vans' decision to "re-brand" the Freightliner Sprinter to sell it under the Dodge brand of vans constituted a lack of good faith "in performing or complying with the terms or provisions of the franchise" pursuant to 15 U.S.C. § 1222 because, according to Agar, re-branding was not permitted by the Dealer Agreement and DC Vans' decision to re-brand was motivated by a bad faith desire to end Agar's business. Second, Agar asserts that DC Vans failed to act in good faith "in terminating, canceling, or not renewing [Agar's] franchise" pursuant to section 1222 because the Feb. 28, 2005 letter from DC Vans was coercive by implicitly threatening non-renewal of Agar's franchise if Agar did not agree to DC Vans'

---

[2] DC Vans also asserts that Agar's claim is time-barred by the ADDCA's three-year statute of limitations and that the ADDCA does not apply because Agar's franchise was not actually terminated. The Court does not need to address these arguments because, as explained below, the Court finds that the complaint does not allege a lack of good faith sufficient to state a claim pursuant to the ADDCA.

7

demand for an early termination of that franchise, a demand also allegedly motivated by a bad faith desire to drive Agar out of business.

Treating all factual allegations in the complaint as true and drawing all reasonable inferences in Agar's favor, the Court finds that Agar has not alleged any facts that support its conclusory assertion that DC Vans failed to act in good faith "in performing or complying with the terms or provisions of the franchise" or "in terminating, canceling, or not renewing [Agar's] franchise," as required by section 1222.

First, Agar's claim that DC Vans' decision to "re-brand" the Freightliner Sprinter constituted a lack of good faith "in performing or complying with the terms or provisions of the franchise" fails because Agar does not allege that DC Vans' decision to re-brand included either an explicit or implicit wrongful demand enforced by threats of coercion or intimidation. See Empire Volkswagon, 814 F.2d at 95. Agar simply alleges a violation of the Dealer Agreement – namely, that although the agreement allowed DC Vans to discontinue the production of a vehicle at any time, it did not permit DC Vans to discontinue a vehicle simply by re-branding it. Regardless of whether re-branding is permitted under the terms of the agreement, and regardless of whether DC Vans' decision to re-brand was motivated by a desire to drive Agar out of business (a conclusory assertion that, as noted below, is unsupported by any facts alleged in the complaint), Agar has no claim pursuant to the ADDCA because there is no allegation of a wrongful demand within the terms of that statute or of facts from which a wrongful demand can be inferred. See Cutrone v. Chrysler Plymouth West, 160 Fed. Appx. 215, 218-220 (3d Cir. 2005) (distinguishing a breach of contract claim from a claim pursuant to the ADDCA and dismissing the ADDCA claim because plaintiff did not allege coercion or intimidation); Buono Sales, Inc. v. Chrysler Motors Corp., 449 F.2d 715, 717-724 (3d Cir. 1971) (even though

defendant violated its dealer agreement, it did not violate the ADDCA because the termination of the agreement did not involve a wrongful demand).

Second, Agar does not allege any facts that support its contention that DC Vans failed to act in good faith "in terminating, canceling, or not renewing [Agar's] franchise." Agar claims that the February 28, 2005 letter from DC Vans was threatening and coercive because it contained an implicit demand for early termination and a threat not to renew the franchise. However, as noted above, the type of coercion or intimidation covered by the ADDCA occurs only when the franchisor makes a "wrongful demand which will result in sanctions if not complied with." General Motors Corp., 263 F.3d at 304. Here, there was no demand at all. Rather, DC Vans is alleged to have given Agar a choice: to allow the Dealer Agreement to expire in due course (which, by its terms, would occur on September 15, 2005) or, in exchange for voluntarily terminating the agreement before September 15, 2005, Agar would be paid $175,100. Agar was free to choose either option without any threat of sanctions. The fact that DC Vans noted in its letter that it intended to "discontinue the distribution of the Freightliner Sprinter Van at the end of the 2006 model year" and that if Agar did not accept the offer, DC Vans would provide "a formal notice of termination at a later date in compliance with your dealer agreement and state law" cannot constitute threatened sanctions because DC Vans had express authority under the Dealer Agreement to not renew the franchise after the September 15, 2005 expiration date. See Dealer Agreement, art. 15.1 ("[n]either party shall have a right to renew or extend this Agreement after its expiration date."). See Smoky Mountain Freightliner, LLC v. DaimlerChrysler Vans LLC, No. 2:05-CV-173, slip-op. at 17 (E.D. Tenn. Mar. 7, 2006) (in a case with similar facts to those alleged by Agar, granting summary judgment because "the decision to begin selling the Sprinter vehicle under the Dodge Brand and through Dodge dealers,

9

which is tantamount to discontinuing the Sprinter line as far as Freightliner dealers are concerned" did not constitute bad faith because there "were no allegations in plaintiff's complaint regarding 'coercion, intimidation or threats.'"); Bob Tatone Ford, Inc.v. Ford Motor Co., 140 F. Supp. 2d 817, 826 (S.D. Ohio 2000) (granting summary judgment to defendant manufacturer in ADDCA action because "rather than making a wrongful demand on plaintiff and threatening sanctions if it failed to comply, the defendant merely pointed out rights that the plaintiff had under the franchise agreement. Whether the dealer decided to exercise those rights was its decision alone."); McDaniel, 480 F. Supp. at 678 ("in the absence of evidence that the termination was designed to punish plaintiffs for their failure to do some act or for doing some act, defendant's conduct did not run afoul of the [ADDCA's] proscriptions.").

Agar claims that the facts alleged in the complaint are sufficient to support the inference that DC Vans acted with a lack of good faith and therefore should survive a motion to dismiss. For that proposition, Agar relies on Kile Int'l Trucks, Inc. v. Int'l Truck and Engine Co., No. 3:05-0534, 2006 WL 47308, at *8 (M.D. Tenn. Jan. 9, 2006), in which the district court denied a motion to dismiss an ADDCA claim because the complaint sufficiently alleged a wrongful demand and a lack of good faith "even as that term is narrowly defined in the ADDCA."

In Kile, however, the complaint included facts from which it could be reasonably inferred that the manufacturer did indeed make a wrongful demand and acted with a bad faith motive to drive the dealer out of business. The complaint in Kile alleged that the defendant coerced Kile into building a new facility by threatening that it would otherwise terminate Kile's franchise; broke a promise by refusing to release the option to an old dealership site, causing Kile to "lose a significant amount of money"; and filed a lawsuit, which Kile contended had no basis in law or

10

fact, in an improper forum demanding an extortionate amount of money. Kile Int'l Trucks, 2006 WL 47308, at *8.

Agar makes no such allegations here. Rather, it alleges only that (1) DC Vans provided Agar with the option of terminating its Dealer Agreement early in exchange for a considerable payment and (2) DC Vans intended to re-brand the Freightliner Sprinter as a Dodge Sprinter after the expiration of the Dealer Agreement. Agar also alleges that "it was always DaimlerChrysler's intention to put a Dodge nameplate on the Sprinter." (Compl. ¶ 18.) These facts, even when read to draw all reasonable inferences in favor of Agar, simply do not support the assertion that DC Vans' February 25, 2005 letter constituted a "wrongful demand enforced by threats of coercion or intimidation," see Empire Volkswagen, 814 F.2d at 95, or that DC Vans made its apparent decision not to renew the franchise in a wrongful attempt to drive Agar out of business. See Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996) ("While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice."). Thus, Agar has not alleged that DC Vans failed to act with good faith as that term is defined in the ADDCA and has been construed by the Second Circuit. See 15 U.S.C. § 1222; Empire Volkswagen, 814 F.2d at 95. Agar has therefore failed to state a claim pursuant to the ADDCA.

## III. CONCLUSION

Because Agar has not alleged that DC Vans made a wrongful demand enforced by threats of coercion or intimidation in performing or complying with the terms or provisions of the franchise or in terminating, canceling, or not renewing the franchise, Agar's claim pursuant to the ADDCA is dismissed pursuant to Fed. R. Civ. P. 12(b)(6). The remaining claims are all state law claims and this Court declines, pursuant to 28 U.S.C. § 1367(c), to exercise supplemental jurisdiction over them. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 16 L.

Ed. 2d 218, 86 S. Ct. 1130 (1966); Purgess v. Sharrock, 33 F.3d 134, 138 (2d Cir. 1994). Defendant's motion is granted and the complaint is dismissed. Agar is granted leave to amend the complaint within 20 days of this Opinion and Order if it so chooses.

Dated: New York, New York
      August 2, 2006

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.